**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CM REGENT INSURANCE GROUP, a/s/o SOUTHEAST DELCO SCHOOL DISTRICT,** *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | |
| **WELLS FARGO BANK, N.A.,** *Defendant.* | : | **No. 26-cv-4854** |

**MEMORANDUM**

**KENNEY, J.** **September 15, 2026**

Plaintiff CM Regent Insurance Company ("Plaintiff"), as subrogee of Southeast Delco School District ("SEDELCO"), brings this suit against Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"), asserting claims for negligence and violation of the Pennsylvania Uniform Commercial Code in connection with the payment of two fraudulent checks made against SEDELCO. ECF No. 4 (hereinafter "Compl.") ¶¶ 27–40. Before the Court is Defendant's Motion to Dismiss the Complaint, ECF No. 14 (the "Motion"), Plaintiff's Response in Opposition, ECF No. 15, and Defendant's Reply, ECF No. 16. For the reasons set forth below, the Court will grant Defendant's Motion to Dismiss.

## I. BACKGROUND

The below facts are taken from Plaintiff's Complaint and are accepted as true at the motion-to-dismiss stage. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Plaintiff is an insurance company that paid losses sustained by its insured, SEDELCO, as a result of the payment of two fraudulent checks. Compl. ¶¶ 1, 4. At all relevant times, SEDELCO utilized the Pennsylvania Local Government Investment Trust ("PLGIT") fund for check clearing services. *Id.*

¶ 6. PLGIT held an account with Defendant. *Id.* ¶ 7. Checks issued through the PLGIT fund "prominently displayed the PLGIT logo on the face of the draft." *Id.* ¶ 8. In July 2023, unknown bad actors created two fraudulent checks that purported to be drawn on SEDELCO funds. *Id.* ¶ 11. The two forged checks bore the same "safety check" number, were made payable to different entities, and were each for the amount of $167,534.27. *Id.* ¶¶ 12–16. "Each check bore different watermarks[,]" and the signature of the authorized signatory on each check "was forged and unauthorized." *Id.* ¶¶ 18, 19. Defendant accepted and paid each of the fraudulent checks. *Id.* ¶¶ 12, 15.

According to Plaintiff, "Wells Fargo failed to implement or follow commercially reasonable security procedures designed to detect forged or fraudulent drafts." *Id.* ¶ 21. Because the forged drafts "prominently displayed SEDELCO's name and address" and "prominently displayed the PLGIT logo," and "PLGIT was a Wells Fargo client," "Wells Fargo knew or should have known that SEDELCO was a Pennsylvania public school district utilizing PLGIT's financial services," and as such, "SEDELCO maintained a special relationship with Wells Fargo." *Id.* ¶ 22. As a result of Defendant honoring the two fraudulent drafts, "SEDELCO sustained losses in the amount of $335,068.54, representing the total of the two fraudulent drafts." *Id.* ¶ 23. Plaintiff indemnified SEDELCO for the total loss and is thus subrogated to SEDELCO's rights to recover from Wells Fargo. *Id.* ¶ 24. In January 2025, Wells Fargo returned $167,534.27 in recovered funds to SEDELCO through PLGIT for one of the forged drafts, but did not return any lost funds for the other forged draft. *Id.* ¶ 25. Plaintiff seeks to recover the remaining $167,534.27 from Wells Fargo. *Id.* ¶ 26.

On May 18, 2026, Plaintiff initiated the instant action against Defendant in the Court of Common Pleas of Delaware County, Pennsylvania. ECF No. 1 at 1. On July 13, 2026, Defendant

removed the action to this Court on the basis of diversity jurisdiction. *Id.* at 2. Plaintiff's Complaint asserts two counts against Defendant, one for negligence and one for violation of the Pennsylvania Uniform Commercial Code ("PUCC"), 13 Pa. Cons. Stat. § 1101, et seq. Compl. ¶¶ 27–40. Defendant moved to dismiss Plaintiff's Complaint in its entirety on August 12, 2026. ECF No. 14. Plaintiff opposed Defendant's Motion to Dismiss on August 26, 2026, ECF No. 15, and Defendant filed a reply on September 8, 2026, ECF No. 16. Accordingly, the Motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citation omitted). A complaint is plausible on its face when the plaintiff pleads a factual contention that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, courts must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 14-2 at 1, 5. For the reasons discussed below, the Court will grant Defendant's Motion in full.

### A. Plaintiff's Negligence Claim Is Preempted by the PUCC

In Count I, Plaintiff alleges that Defendant "owed a duty to exercise ordinary care and to act in accordance with reasonable commercial banking standards in reviewing and processing drafts presented for payment," and breached its duty by failing to detect and reject the fraudulent PLGIT checks. Compl. ¶¶ 28–31. Defendant's "breaches were the direct and proximate cause of" the losses of Plaintiff's subrogor, SEDELCO. *Id.* ¶ 30. Defendant moves to dismiss Count I, arguing that Plaintiff's common law negligence claim is displaced by the PUCC and that Defendant owed no duty of care to SEDELCO. ECF No. 14-2 at 9. Plaintiff counters that the inquiry into whether the PUCC displaces common law claims "is fact-specific and does not support dismissal at the pleading stage where disputed facts remain." ECF No. 15 at 12. Plaintiff is incorrect on this point, and negligence claims are appropriately dismissed at the motion to dismiss stage where preempted by the PUCC.

The PUCC "displaces common law claims when two circumstances are satisfied: (1) the Code supplies a comprehensive remedy to the claim and (2) reliance on the common law rather than the Code would thwart the Code's purposes." *Utica Mut. Ins. v. Wells Fargo Bank, N.A.*, --- F. Supp. 3d ---, No. 25-cv-5867, 2026 WL 1662583, at *3 (E.D. Pa. June 9, 2026) (quoting *Reg'l Produce Coop. Corp. v. TD Bank, N.A.*, 645 F. Supp. 3d 394, 421 (E.D. Pa. 2022)). For common law negligence claims, the PUCC provides for "an elaborate and comprehensive negligence regime." *Env't Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 713 (E.D. Pa.

2010). Indeed, Section 4401 of the PUCC, which the Complaint cites in support of the PUCC cause of action (Count II), "creates a general cause of action in negligence, allowing aggrieved customers to assert claims against banks when banks charge items that are not properly payable against customer accounts." *Id.* (citing 13 Pa. Cons. Stat. § 4401). "Section 4406 makes this regime even more intricate in cases of altered checks or forged drawer signatures when banks choose to provide their customers with account statements." *Id.* Additionally, the PUCC's "remedial scheme is comprehensive because the Code addresses each possible form of check fraud and tailors a different remedy to each situation," including unauthorized signatures, imposter and fictitious payees, check fraud by employees, and fraudulently altered checks. *H.G. Litig. Grp., LLC v. TD Bank, N.A.*, 598 F. Supp. 3d 249, 253 (E.D. Pa. 2022).

"Courts in this Circuit have held that the Code displaces any negligence actions that are based on wrongfully paying a negotiable instrument to a person not entitled to enforce the instrument or receive payment," which is precisely the situation that Plaintiff alleges occurred in this case. *Naidu v. PNC Bank, Nat'l Ass'n*, 729 F. Supp. 3d 467, 473 (E.D. Pa. 2024); *see also Utica Mut. Ins.*, 2026 WL 1662583, at *3 (collecting cases). As stated in the Complaint, the basis of Plaintiff's negligence claim is that Defendant wrongfully "accepted and paid" two fraudulent checks to entities that were not authorized to receive payment of the drafts. Compl. ¶¶ 12, 15, 19–20. Because the PUCC provides Plaintiff with a comprehensive remedy to address the alleged negligence of Defendant and because "[a]llowing the common law to disturb [the PUCC's] intricate and delicately crafted remedial scheme would thwart the Code's purpose of placing the risk of loss in these transactions on the party best situated to prevent the loss," *H.G. Litig. Grp.*, 598 F. Supp. 3d at 253, the Court finds that Plaintiff's common law negligence claim against Defendant is preempted by the PUCC. Accordingly, Count I of the Complaint will be dismissed.

Because the Court finds that Plaintiff's negligence claim is displaced by the PUCC, it will decline to address Defendant's argument in its Motion that Defendant owed no duty of care to Plaintiff's subrogor, SEDELCO. *See* ECF No. 14-2 at 10–11.

### B. Plaintiff Cannot State a Claim for Liability Against Defendant Under the PUCC

In Count II, Plaintiff alleges that because Wells Fargo improperly paid fraudulent checks with forged signatures, "[p]ursuant to 13 [Pa. Cons. Stat.] §§ 3401, 3404, and 4401, Wells Fargo is liable for the amount of the improperly paid drafts." Compl. ¶ 36. In its Motion, Defendant argues that as the "payable through" bank, it is not liable under the PUCC to Plaintiff's subrogor, SEDELCO, for honoring the fraudulent drafts. ECF No. 14-2 at 8–9. Plaintiff responds that Defendant's status as a "payable through" bank does not eliminate Defendant's liability under the PUCC but rather "defines which [P]UCC provisions apply." ECF No. 15 at 8.

The PUCC imposes different obligations upon a bank depending on whether it is a "payor bank" or a "collecting bank." *See* 13 Pa. Cons. Stat. §§ 3404, 4202; *see Nisenzon v. Morgan Stanley DW, Inc.*, 546 F. Supp. 2d 213, 224–25 (E.D. Pa. 2008). A "payor bank" is defined as "[a] bank that is the drawee of a draft" and a "collecting bank" is defined as "[a] bank handling an item for collection except the payor bank." 13 Pa. Cons. Stat. § 4105. A "drawee" is defined as "[a] person ordered in a draft to make payment." *Id.* §§ 3103, 4104. Here, Wells Fargo argues that it was not the drawee or the payor bank in relation to the two fraudulent checks. ECF No. 14-2 at 8. Instead, Wells Fargo contends that it was a collecting bank and that PLGIT was the payor bank that determined whether to accept or reject the fraudulent checks that Wells Fargo presented to PLGIT for payment. *Id.* at 8–9.

The two fraudulent checks that were wrongfully paid both included the PLGIT logo in the upper lefthand corner and the words "payable through Wells Fargo Bank, N.A." near the top

righthand side. Compl. ¶¶ 12, 15. An image of one of the fraudulent checks is reproduced below:



PLGIT

SOUTHEAST DELCO SCHOOL DISTRICT
GENERAL OPERATING ACCOUNT
[redacted]
FOLCROFT, PA 19032

PAYABLE THROUGH WELLS FARGO BANK, N.A.

6868

62-22/311 DATE 07/17/23

AMOUNT **167,534.27

*** ONE HUNDRED SIXTY SEVEN THOUSAND FIVE HUNDRED THIRTY FOUR DOLLARS AND 27/100

PAY TO THE ORDER OF Craig Daniel Rideaux-Jones
13412 Baron Hill Ln
Rosharon, TX 77583

⑈006868⑈ ⑆031100225⑆ [redacted] 1088⑈

*Id.* ¶ 12. Pursuant to the PUCC, "[i]f an item states that it is 'payable through' a bank identified in the item, the item designates the bank as a collecting bank and does not by itself authorize the bank to pay the item, and the item may be presented for payment only by or through the bank." 13 Pa. Cons. Stat. § 4106. In its response to the Motion, Plaintiff concedes that the designation of Wells Fargo as a collecting bank under the PUCC is correct. ECF No. 15 at 8. As such, the PUCC provisions referenced in the Complaint are inapplicable to Wells Fargo since Wells Fargo was not the payor bank. *See* Compl. ¶¶ 36–37.

After admitting that Wells Fargo is actually a collecting bank, Plaintiff shifts gears, arguing that "this statutory designation does not eliminate [P]UCC liability" but rather "defines which [P]UCC provisions apply." ECF No. 15 at 8. Plaintiff then points to Section 4202 of the PUCC, which provides as follows:

> **(a) When collecting bank must exercise ordinary care.** -- A collecting bank must exercise ordinary care in:
>
> (1) presenting an item or sending it for presentment;
>
> (2) sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the transferor of the bank after learning that the item has not been paid or accepted, as the case may be;
>
> (3) settling for an item when the bank receives final settlement; and

> (4) notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof.

13 Pa. Cons. Stat. § 4202(a); *see* ECF No. 15 at 8–9. Plaintiff argues that this PUCC provision imposes a duty upon a collecting bank to exercise ordinary care in handling checks for presentment and "whether [Defendant] exercised ordinary care in" presenting the two fraudulent drafts for payment to PLGIT is "the very question the Complaint raises." ECF No. 15 at 9.

However, the PUCC defines the "exercise of ordinary care" narrowly in the very next portion of Section 4202:

> **(b) Exercise of ordinary care. --** A collecting bank exercises ordinary care under subsection (a) by taking proper action before its midnight deadline following receipt of an item, notice or settlement. Taking proper action within a reasonably longer time may constitute the exercise of ordinary care, but the bank has the burden of establishing timeliness.

13 Pa. Cons. Stat. § 4202(b). Taken together, PUCC § 4202 imposes a duty upon a collecting bank to take "proper action before its midnight deadline following receipt of an item" when "presenting an item or sending it for presentment." *Id.* § 4202. The Complaint contains no allegations that Wells Fargo did not timely present the two fraudulent drafts to PLGIT for payment, only that Wells Fargo failed to detect that the two drafts were forgeries. *See* Compl. The PUCC does not impose any obligations upon collecting banks to investigate the authenticity of a draft prior to presenting it to the payor bank, for which such a duty does exist.[1] For the reasons stated, Plaintiff's Complaint does not make out a claim that Defendant failed to exercise ordinary care with respect to its duties

[1] "Generally, a drawee" or payor "bank is strictly liable to its customer, the drawer, for payment over either a forged maker's signature or a forged indorsement." *Travelers Indem. Co. v. Stedman*, 895 F. Supp. 742, 746 (E.D. Pa. 1995) (citation and footnote omitted). For purposes of the PUCC, institutions that are not banks in the traditional sense may nonetheless be considered "banks" under the PUCC if they offer checking services. *See Nisenzon*, 546 F. Supp. 2d at 224–25 (collecting cases finding that entities such as brokerage firms and money market accounts that provided customers with checking accounts and monthly statements fell within the definition of "banks" under the PUCC).

as a collecting bank pursuant to PUCC § 4202.

Plaintiff makes two more arguments in an attempt to maintain its PUCC claim against Defendant. First, Plaintiff argues that good faith is a general requirement of the PUCC and that "bad faith on the part of a bank precludes the imposition of statutory defenses or creates liability notwithstanding the applicability of those defenses." ECF No. 15 at 9. However, whether Defendant is allowed to raise certain statutory defenses has no bearing on the fact that no PUCC provision imposes a duty upon collecting banks such as Defendant to detect fraudulent drafts before presenting them for payment. Without such a duty, Plaintiff cannot make out a claim that Defendant violated the PUCC.

Second, Plaintiff argues that "[P]UCC's loss-allocation scheme in forged-check cases distributes responsibility among multiple parties based on their relative fault and proximity to the fraud." *Id.* at 10. While Plaintiff is correct that "when a drawee bank pays over a forged endorsement, it can shift the loss upstream to previous endorsers, including collecting banks, by way of an action for breach of warranty of good title," *id.* at 11, the PUCC does not permit a non-customer or third party to forego suing its payor or drawee bank in order to reach the upstream collecting bank. *See Nisenzon*, 546 F. Supp. 2d at 225 ("Under the [P]UCC, a bank breaches its agreements with a customer when it pays the holder of a forged check. It is this breach which constitutes the customer's cause of action against a bank to recover the sums paid out on checks bearing forged signatures."). Plaintiff provides no case law in support of its contention that a collecting bank may be held liable to a payor bank's customer for presenting a fraudulent check to the payor bank for payment. *See* ECF No. 15 at 10–11. And in cases where an action for breach of warranty of good title is brought against a collecting bank, the party bringing the action is always a drawee bank because the warranties by the collecting bank are made to the drawee bank, not to

the drawee bank's customer. *See, e.g.*, *Nisenzon*, 546 F. Supp. 2d at 226 ("If a [collecting] bank breaches a presentment warranty to a drawee, '[a] drawee making payment may recover from [the collecting bank] damages for breach of warranty equal to the amount paid by the drawee.'" (quoting 13 Pa. Cons. Stat. § 4208(b)) (second alteration in original)); *Travelers Indem. Co.*, 895 F. Supp. at 746–47 ("But where the only forged signature is an indorsement, the drawee normally may pass liability back through the collection chain to the depositary or collecting bank . . . by a claim for breach of presentment warranties."); *Cornelius v. PNC Bank, N.A.*, 585 F. Supp. 3d 792, 794–95 (W.D. Pa. 2022) (payor bank brought third-party claim against depository bank for breach of presentment warranties where depository bank presented an allegedly fraudulent check to payor bank for payment); *see also Perlberger L. Assocs., P.C. v. Wells Fargo Bank, N.A.*, 552 F. Supp. 3d 490, 495–96 (E.D. Pa. 2021) (rejecting plaintiff's theory that it was a third-party beneficiary of the warranties made by a transferor bank to a transferee bank when transferor bank was acting as plaintiff's agent). Therefore, Wells Fargo cannot be held liable to SEDELCO under the PUCC for breach of warranty of good title to PLGIT.

Accordingly, as a matter of law, Plaintiff fails to state a claim against Wells Fargo for a violation of the PUCC.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant in full Defendant's Motion to Dismiss (ECF No. 14). Plaintiff's Complaint will be dismissed in its entirety without prejudice. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**